**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA

                 v.

ANTHONY PERCELL

:        CRIMINAL ACTION

:

:        NO. 22-259

:

## <u>MEMORANDUM</u>

**SURRICK, J.**                                                                   **AUGUST 27, 2023**

Defendant Anthony Percell is charged in a twelve-count Indictment with several offenses all related to his alleged use of another individual's name and Social Security Number ("SSN") to obtain replacement Social Security Cards, to apply for Supplemental Security Income ("SSI") benefits, to obtain the identification card necessary to enter secure and non-public areas of the Philadelphia International Airport ("PHL"), and to apply for and renew United States passports. (Indictment, ECF No. 17.)[1]  Presently before the Court is Defendant's Motion to Dismiss Count Twelve (ECF No. 46), which charges him with aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) and (c)(1).  For the following reasons, Defendant's Motion will be denied.

## I.      BACKGROUND

The Indictment alleges that for more than 25 years, Defendant used the name, SSN, and other identity information of "D.S.," a deceased former high school classmate of Defendant, to obtain and/or apply for the various documents and benefits summarized above.  (*See generally* Indictment.)  Specifically, the Indictment alleges that in August of 1994, Defendant fraudulently applied for a replacement Social Security card using D.S.'s name and the SSN previously issued

---

[1] The Indictment was originally filed on August 9, 2022, at ECF No. 1.  On August 18, 2022, the Court granted the Government's motion to amend the Indictment to correct typographical errors in its statutory citations. (*See* ECF Nos. 4,7.)  The Amended Indictment reflecting those corrections is docketed at ECF No. 17.

to D.S. [2]   Defendant thereafter allegedly submitted additional applications for replacement

Social Security cards using D.S.'s name and SSN on or about December 12, 1995; February 27,

2017; March 3, 2017; and January 15, 2019.  (*Id.*, Cts. I and II ¶¶ 8-11.)  The Indictment alleges

that on or about August 30, 2020, Defendant applied for SSI benefits in the name and SSN of

D.S. and falsely attested that he (Defendant) was D.S.'s domestic partner.  (*Id.* ¶ 12.)  Counts

One and Two of the Indictment charge Defendant with misuse of a SSN, in violation of 42

U.S.C. § 408(a)(7)(B), with respect to the January 15, 2019, application for a replacement SSN

and the August 30, 2020, application for SSI benefits.  (*Id.* ¶ 15.)

Count Three of the Indictment alleges that beginning in January 2000, Defendant worked

for Piedmont Airlines under D.S.'s identity, and in connection with that position, applied for and

obtained a Security Identification Display Area ("SIDA") badge in D.S.'s name that allowed him

access to restricted areas of PHL.  (*Id.*, Ct. III ¶¶ 2-8.)  The Indictment alleges that Defendant

renewed the fraudulent SIDA badge ten times between January 2010 and December 2021, and

charges him with entry by false pretenses to the secured area of an airport in violation of 18

U.S.C. § 1036(a)(4).  (*Id.* ¶ 8.)

Indictment Counts Four through Eleven charge Defendant with false statements in the

application and use of a United States passport, in violation of 18 U.S.C. § 1542.  (*Id.*, Cts. IV-XI

¶ 6.)  Specifically, the Indictment alleges that in 2005, Defendant applied for a passport in the

name of D.S. by supplying a Pennsylvania driver's license and birth certificate in D.S.'s name,

and the SSN assigned to D.S.  (*Id.* ¶ 2.)  The resulting passport issued to Defendant contained his

---

[2] According to the Indictment, Defendant applied for and was assigned a SSN in his own name in January 1976.  (*Id.* ¶ 5.)  D.S., approximately 11 months younger than Defendant, applied for and was issued his SSN in December 1976.  (*Id.* ¶ 6.)  D.S. died in July 1986 at the age of 17.  (*Id.*)

photograph and D.S.'s personal identification information.  (*Id.* ¶ 3.)  In January 2020, Defendant

applied for and obtained a renewal of the initial passport, again using D.S.'s SSN.  (*Id.* ¶ 4.)  The

Indictment alleges that between 2016 and 2022, Defendant used the fraudulent passports to

obtain SIDA credentials, travel outside the United States, and apply for a firearms license.

(*Id.* ¶¶ 4-6.)

Indictment Count Twelve, which is the subject of Defendant's Motion, charges him with

aggravated identity theft, alleging that on or about January 23, 2020:

> [Defendant] knowingly and without lawful authority, used a means of identification
> of another person, that is, the name, birthdate, and social security number of "D.S.,"
> during and in relation to passport fraud, in violation of Title 18, United States Code,
> Section 1542.

> In violation of Title 18, United States Code, Sections 1028A(a)(1), (c)(1).[3]

(*Id.*, Ct. XII ¶ 2.)

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 7(c)(1), an indictment must "be a plain,

concise, and definite written statement of the essential facts constituting the offense charged" and

"must give the official or customary citation of the statute, rule, regulation, or other provision of

law that the defendant is alleged to have violated."  Fed. R. Crim. P. 7(c)(1).  Defendant's

motion in this case requires that we determine whether Count Twelve of the Indictment fails to

state an offense.  *See* Fed. R. Crim. P. 12(b)(3)(B)(v).  In reviewing whether an indictment

sufficiently alleges the crime charged, the court must determine "whether the facts alleged in the

indictment, if accepted as entirely true, state the elements of an offense and could result in a

---

[3] Although the Indictment alleges aggravated identity theft "during and in relation to
passport fraud," Count Twelve does not reference 18 U.S.C. § 1028A(c)(7), which defines the
predicate offenses of aggravated identity theft to include passport fraud.  *See* 18 U.S.C.
§ 1028A(c)(7) (listing felony violation of "any provision contained in chapter 75 (relating to
passports and visas)" as a predicate of aggravated identity theft); 18 U.S.C. § 1542 (defining

guilty verdict." *United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011) (citation omitted).
Generally, when a motion alleges that an indictment fails to state an offense, the court conducts
"a narrow, limited analysis geared only towards ensuring that legally deficient charges do not go
to a jury." *Id.* at 268.  Moreover, "a pretrial motion to dismiss an indictment is not a permissible
vehicle for addressing the sufficiency of the government's evidence." *United States v.
DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000).

## III.    DISCUSSION

The aggravated identity theft statute, 18 U.S.C. § 1028A(a)(1), "applies when a
defendant, 'during and in relation to any [predicate offense], knowingly transfers, possesses, or
uses, without lawful authority, a means of identification of another person.'"  *Dubin v. United
States*, 143 S. Ct. 1557, 1563 (2023).  Defendant's Motion is premised on the Supreme Court's
recent decision in *Dubin*, in which the Court narrowed and to some degree clarified the scope the
statute's terms, requiring that to commit the crime of aggravated identity theft a defendant must
"use" the identification of another person "in relation to" a predicate crime for that offense.  *Id.*
at 1564.  As the Supreme Court noted, the predicate offenses [for aggravated identity theft]
include, among many others, felony violations of "any provision contained in chapter 75
(relating to passports and visas)," including "false statement in application and use of passport"
in violation of 18 U.S.C. § 1542.  "Section 1028A(a)(1) carries a severe penalty: a mandatory
minimum sentence of two years in prison 'in addition to the punishment' for the predicate
offense.  *Id.* at 1563.  After dissecting, *inter alia*, the statute's title and terms, the interpretation
of "indeterminate" language in other statutes, and principles of statutory construction,
particularly in the criminal context, the Court held that:

---

offense of, and specifying penalties for, "false statement in application and use of passport").

> A defendant "uses" another person's means of identification "in relation to" a predicate offense when this use is at the **crux** of what makes the conduct criminal. To be clear, being at the crux of the criminality requires more than a causal relationship, such as "'facilitation'" of the offense or being a but-for cause of its "success." *Post*, at 1575, 1576 – 1577 (GORSUCH, J., concurring in judgment).  Instead, with fraud or deceit crimes like the one in this case, the means of identification specifically must be used in a manner that is fraudulent or deceptive.  Such fraud or deceit going to identity can often be succinctly summarized as going to "who" is involved.

*Id.* at 1573 (emphasis added); *see also United States v. Jones,* No. 23-09, 2023 WL 4672383, at *4 (E.D. Va. July 20, 2023) (holding, post-*Dubin*, that a defendant's use of his brother's identity and means of identification in a passport application constituted aggravated identity theft).  As the court in *Jones* summarized, the allegations in that case—which is closely analogous to Defendant's—"fit within the *Dubin* 'serious identity theft' framework, as [defendant] was alleged to have taken his brother's identity with 'the intent to commit another crime,' to wit: making a false statement in connection with his passport application."  *Jones*, 2023 WL 4672383, at *5.

In an effort to fit within the Supreme Court's more circumscribed interpretation of aggravated identity theft, Defendant argues that "the circumstances involved in [Defendant's] conduct are far more than unique" than those in *Dubin*, noting that D.S., the individual whose identity Defendant used, was deceased[4] and a former friend of Defendant, and that Defendant assumed D.S.'s identity "at an early period in his adulthood and then proceed[ed] to live under that identity for twenty-seven years."  (Mot. and Mem., at 4 (ECF pagination).)  As further explanation, Defendant asserts that he initially coopted D.S.'s identity because of concern he would be unable to obtain a commercial driver's license due to his own previous arrest for driving under the influence.  (*Id.* at 3.)  Defendant further argues that he was never ineligible to

---

[4] With respect to whether the offense defined in 18 U.S.C. § 1028A(a)(1) includes the use without lawful authority of a means of identification of a deceased person, the clear weight of authority holds "that the term 'person' in subsection 1028A(a)(1) includes deceased persons."

obtain a legitimate passport in his own name, that he was born in the United States and was

under no passport restriction, and that his "use of the name, birthdate, and [SSN] of D.S. to

obtain a passport indicates that it was not in relation to any [other] criminal conduct." (*Id.* at 1-

2.)

Although these circumstances—which appear undisputed—potentially invite some

sympathy for Defendant's current predicament and the resulting serious consequences, his

arguments do not support a conclusion that Defendant's use of D.S.'s identity was not the "crux"

of Defendant's criminal conduct.  On the contrary, Defendant's arguments support the opposite

conclusion—that his ongoing use of D.S.'s identification information did not merely facilitate

some other crime or fraud; it was the linchpin of and the sole means by which Defendant

achieved the end of fraudulently assuming D.S.'s identity and obtaining the various documents

and privileges detailed in the Indictment.  *See Dubin*, 143 S. Ct. at 1573 (explaining that with

fraud or deceit crimes like aggravated identity theft, "the means of identification specifically

must be used in a manner that is fraudulent or deceptive.  Such fraud or deceit going to identity

can often be succinctly summarized as going to 'who' is involved").

Accordingly, given the statutory language, as interpreted by the Supreme Court in *Dubin*,

we conclude that Defendant's alleged and admitted conduct fits within the statutory definition of

aggravated identity theft and constitutes the "crux" of the offense.  Under these circumstances, it

would be inappropriate for this Court to make an *ad hoc* determination about whether Congress

did or did not intend the crime of aggravated identity theft—and its attendant mandatory two-

year prison sentence—to apply to a case like this one, where the fraud did not involve any

alleged pecuniary loss, the individual whose identity was fraudulently used is long-deceased,

---

*See*, *e.g.*, *United States v. George*, 946 F.3d 643, 645 (4th Cir. 2020) (collecting cases).

and, as far as the Court can discern, the crime did not have an identifiable victim beyond the harm to societal interests inherent in Defendant's decades-long and repeated disregard of the law. Instead, we must enforce the statute as written in accordance with the interpretive guidance recently provided by the Supreme Court, both of which compel the conclusion that the Indictment sufficiently charges Defendant with aggravated identity theft.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Count Twelve of the Indictment is denied.  An appropriate order accompanies this Memorandum.

**BY THE COURT:**

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**